# COURT OF APPEALS OF VIRGINIA

## Record No. 1016-25-4

MARCUS BURNETT

v.

COMMONWEALTH OF VIRGINIA

Present: Judges AtLee, Friedman and Senior Judge Annunziata
Argued at Alexandria, Virginia

Opinion Issued August 4, 2026[*]

### FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Michelle M. Kaminsky, Judge[1]

Dawn M. Butorac (Fairfax County Public Defender's Office, on briefs), for appellant.

Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,[2] Attorney General, on brief), for appellee.

### MEMORANDUM OPINION BY
### JUDGE RICHARD Y. ATLEE, JR.

Following a bench trial, the trial court convicted Marcus Burnett of one count of

soliciting a minor with the intent to induce such minor to perform in or be the subject of child

pornography, in violation of Code § 18.2-374.1. Burnett raises several issues on appeal. First,

he argues that the trial court abused its discretion when it admitted certain photographs of the

minor and testimony about the photographs' metadata. Second, he contends that the trial court

abused its discretion by admitting evidence regarding the victim's e-mail address. Next, he

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] While Judge Kaminsky presided over the sentencing hearing, the Honorable Brett A. Kassabian presided over the trial and made the rulings challenged on appeal.

[2] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

argues that the trial court abused its discretion by admitting two documents pertaining to e-mail conversations between him and the victim. Finally, he argues that the evidence was insufficient to sustain his conviction. We affirm the trial court.

BACKGROUND

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth," the prevailing party below. *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)).

On July 31, 2022, Burnett—who was 21 years old at the time—logged onto Roblox[3] and accessed an "Omegle-style chat room" server. He decided to play the game because he "was horny" and was "wonder[ing] if [he] could get pictures" from someone. He soon began chatting with M.P., who was 11 years old at the time and logged on from her family's home in Fairfax County. He asked M.P. if she would be willing to send him nude photographs, and she agreed. M.P. then told Burnett her age. The two exchanged e-mail addresses and the conversation continued by e-mail.

M.P. initially expressed some hesitation about sending Burnett nude photographs, but he reassured and encouraged her. M.P. sent several nude photographs of herself to Burnett. After she sent the first photographs, Burnett asked her to "send more" and requested that she take pictures in particular poses, such as "spread[ing] [her] butt cheeks." M.P. sent additional photographs fulfilling Burnett's requests. After she sent the photographs, he directed her to delete all of their emails and the photographs.

When M.P.'s mother, Holly Spanier, came home from work that day, she discovered M.P. in the bathroom with her computer. Spanier asked M.P. what she was doing and confiscated the computer. Spanier discovered the nude photographs of M.P. in the trash folder of

---

[3] Roblox is a multiplayer video game platform generally used by children.

M.P.'s e-mail account. She recognized her daughter in the photographs, and she called the police.

Fairfax County Police Detective Blake Allbritton investigated the incident. When he arrived at the family's residence that day, Spanier gave him M.P.'s computer. At Spanier's directive, Allbritton observed the nude photographs of M.P. and the e-mails between M.P. and Burnett. He took the computer into evidence and later conducted a forensic examination of it. During the examination, the computer "crashed," and Allbritton was unable to obtain a "full copy" of the data on the computer. He was, however, able to retrieve all of the photographs that Spanier showed him at the home.

During his investigation, Detective Allbritton submitted search warrants and subpoenas to Google for information relating to M.P.'s email address, loverider998.132@gmail.com, and the e-mail address M.P. communicated with, burnemar4851@gmail.com. Allbritton's investigation led him to Burnett.

Shawn Cutter, who was at that time an investigator with the Naval Criminal Investigative Service,[4] interviewed Burnett on October 24, 2023.[5] Cutter informed Burnett that he was suspected of production of child pornography. Burnett initially denied having any involvement in child pornography. Eventually, however, he admitted to receiving the pictures from M.P. He told Cutter that he met a girl on Roblox and asked her to send nude photographs, that she told him her age, and that the two then exchanged e-mail addresses. He claimed that he could not remember the girl's age, but he estimated that she was 14 or 15. He told Cutter that "in the moment" he "kn[ew] [he] shouldn't" have asked her for the photographs because she was

_____

[4] At the time of trial, Cutter worked with the Department of the Army's Criminal Investigation Division.

[5] At the time of the interview, Burnett was in the United States Marine Corps.

underage, but he still decided to "go for it." Cutter read Burnett the e-mail conversations between M.P.'s e-mail address and burnemar4851@gmail.com, and Burnett confirmed both that he was the owner of the e-mail account and that he sent the messages.

Detective Allbritton interviewed Burnett for the first time in December 2023, after Burnett was extradited to Virginia. During the interview, Burnett reiterated the confession he previously made to Cutter. He told Allbritton that he understood Roblox was a game traditionally used by children. When Allbritton asked Burnett if he "set out with the intention of getting pictures of children," Burnett responded that he "was in . . . the mindset that it would probably happen." And when Allbritton asked Burnett why he sought illicit photographs from underage children as opposed to adult women, Burnett suggested that it was "maybe curiosity."

A grand jury subsequently indicted Burnett on two counts of soliciting a minor to perform in child pornography. At trial, Spanier testified about her discovery of the photographs on M.P.'s computer. The Commonwealth asked Spanier whether she recalled M.P.'s e-mail address and Burnett objected, arguing that such testimony was inadmissible hearsay and violated the best evidence rule. The trial court overruled the objection and permitted Spanier to testify that M.P.'s e-mail address was loverider998.132@gmail.com. During cross-examination, Spanier explained that she knew of the e-mail address because she had seen her daughter use it before. She confirmed that, after seeing the e-mail address, she asked M.P. whether it was connected to M.P.'s Roblox username, and M.P. showed her. Burnett renewed his objection, arguing that Spanier only learned of the e-mail address through hearsay. The trial court overruled the renewed objection.

Spanier also identified her daughter as the individual depicted in the photographs sent to Burnett. She explained that she recognized the scar on M.P.'s genitals from an injury M.P. previously sustained and that she could identify the bathroom lights and ceiling from the

photographs. Detective Allbritton testified and identified the photographs as those which he observed on the laptop at the family's home on July 31, 2022. When the Commonwealth moved to admit the photographs collectively as Commonwealth's Exhibit 1, Burnett objected on the grounds of relevance and foundation. The trial court overruled the objection and admitted the photographs.

Allbritton also testified about the information on M.P. and Burnett's e-mail accounts that was obtained from Google with search warrants and subpoenas. The Commonwealth moved to admit a certificate of authenticity from Google, which included an attachment containing a list of hash values.[6] Burnett objected, but the trial court overruled his objection and admitted the document pursuant to the certificate of authentication hearsay exception created by Code § 19.2-70.3. The Commonwealth also moved to admit a document created by Allbritton which charted the sender, recipient, subject line, date, and size of each of the e-mails sent between M.P. and Burnett. Burnett objected on hearsay grounds, arguing that the document did not qualify under the Code § 19.2-70.3 exception. The trial court overruled his objection and admitted the document.

At the conclusion of the Commonwealth's case-in-chief, Burnett made a motion to strike the charges. He argued that the photographs of M.P. were not a lewd exhibition of nudity within the meaning of Code § 18.2-374.1. He also asserted that the Commonwealth had failed to prove the elements of intent and solicitation. The trial court took the motion to strike under advisement. Burnett did not present any evidence in his own defense and he renewed his motion to strike. After hearing additional argument, the trial court acquitted Burnett of one count of enticing a minor to perform in child pornography as it applied to three of the four photographs in

---

[6] The term "hash value" refers to a computer-generated code used to a identify a particular file.

Commonwealth's Exhibit 1, finding that those three photographs were not a lewd exhibition of nudity within the statute.[7] But the trial court convicted him of the second count, finding that Photo 1B did depict a lewd exhibition of nudity. Burnett now appeals.

ANALYSIS

A. *Admissibility of Evidence*

"We review a trial court's evidentiary rulings for an abuse of discretion." *Jordan v. Commonwealth*, 84 Va. App. 446, 464 (2025). "In evaluating whether a trial court abused its discretion, . . . 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action.'" *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009) (quoting *Beck v. Commonwealth*, 253 Va. 373, 385 (1997)).

1. Commonwealth's Exhibit 1

Burnett argues that the trial court erred by admitting Commonwealth's Exhibit 1. He contends that the Commonwealth failed to demonstrate that the photographs were relevant and failed to establish a proper foundation. He also argues that the trial court erred by allowing Detective Allbritton to testify about certain data from the photographs. We see no error in the trial court's decision.

Evidence is relevant if it "ha[s] any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. "[I]t is always essential to the right to introduce a photograph in evidence that it have a relevant and material bearing upon some matter in controversy at trial, and the party offering such evidence should give proof of its relevancy to the issue before the jury." *Morris v. Commonwealth*, 14 Va. App. 283, 285 (1992) (quoting *Cook v. Commonwealth*, 7 Va. App. 225, 231 (1988)). "The

---

[7] The trial court referred to each of the four photographs in Commonwealth's Exhibit 1 as Photos 1A, 1B, 1C, and 1D respectively. It dismissed the one count as it applied to Photos 1A, 1C, and 1D.

test establishing relevance is not whether the proposed evidence conclusively proves a fact, but whether it has any tendency to establish a fact at issue." *Wise v. Commonwealth*, 6 Va. App. 178, 188 (1988).

Burnett argues that, when the trial court admitted Commonwealth's Exhibit 1, there was no evidence that the photographs were sent to him or taken at his request. He contends that the Commonwealth was required to establish that the photographs were connected to him to meet the threshold for relevance. But his position misunderstands the scope of our appellate review. "[W]e consider the entire record on appeal, not just the evidence before the court at the time of the ruling." *Ricks v. Commonwealth*, 39 Va. App. 330, 336 n.3 (2003). And viewing the record in its entirety, we conclude that the photographs in Commonwealth's Exhibit 1 were relevant to establish that Burnett solicited and received sexually explicit visual material from a person under the age of 18. During his interviews with law enforcement, Burnett admitted that he asked for and received the photographs from M.P. Additionally, the e-mails between Burnett and M.P. demonstrate both that he requested the photographs and that they were sent to him. Accordingly, the trial court did not err by finding the photographs relevant.

Nor did the trial court abuse its discretion by finding that the Commonwealth laid a proper foundation. "A proper foundation must be laid for the introduction of all evidence." *Sabo v. Commonwealth*, 38 Va. App. 63, 79 (2002) (quoting *Horsley v. Commonwealth*, 2 Va. App. 335, 338 (1986)). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the thing in question is what its proponent claims." Va. R. Evid. 2:901. A proper foundation is laid for a photograph when it "is verified by the testimony of a witness as fairly representing what that witness has observed," and that witness need not be "the photographer who made [the

photograph]." *Bailey v. Commonwealth*, 259 Va. 723, 738 (2000) (quoting *Ferguson v. Commonwealth*, 212 Va. 745, 746 (1972)).

Here, the testimony of Spanier and Detective Allbritton that the photographs fairly represented what they observed was sufficient to establish a proper foundation. Spanier testified that she confiscated the computer from her daughter and observed the photographs in the trash folder of her daughter's e-mail account. Allbritton testified that he observed the photographs on the computer at the family's home on July 31, in the forensic data extraction that he later conducted,[8] and in the records produced by Google. Accordingly, the trial court did not abuse its discretion by finding that the Commonwealth laid a proper foundation for the photographs.

Finally, Burnett argues that the trial court abused its discretion by permitting Allbritton to testify that the photographs in Commonwealth's Exhibit 1 were stored on the computer on July 31, 2022. He argues that it was improper for the trial court to permit this testimony because the Commonwealth's expert designation did not state this opinion or its basis.[9]

Burnett's contention is misguided. As the Commonwealth argues, Allbritton's testimony regarding when the photographs were stored on the computer was not an expert opinion. Instead, it was based on his personal knowledge. The data extraction report displayed the date

---

[8] Burnett is misguided in his contention that the photographs were unreliable because the computer crashed during Detective Allbritton's forensic data extraction. Allbritton testified at trial that the data extraction program does not alter any files that it extracts from a device. And the photographs in Commonwealth's Exhibit 1 were in the data that Allbritton was able to extract before the computer crashed. Thus, it is merely speculative that the crash affected the reliability of the photographs, and it is best left to the factfinder to determine what weight to give the photographs. *See Reedy v. Commonwealth*, 9 Va. App. 386, 391 (1990) ("Where there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight to be given to the evidence.").

[9] The trial court's discovery order was consistent with Rule 3A:11(b)(4)(A), which authorizes requiring the Commonwealth to disclose any expert witness's opinions and the bases for those opinions.

that each photo was taken, and Allbritton personally observed that date.  When he stated that date during his testimony, he was not interpreting the data from the report or offering an opinion on it. He was merely reciting the date that he observed listed in the report.  Thus, he offered factual testimony, not opinion.  *Toraish v. Lee*, 293 Va. 262, 272-73 (2017).  Accordingly, the trial court did not abuse its discretion by admitting the testimony.

   2.  Evidence of M.P.'s E-mail Address

Burnett argues that the trial court erred by admitting testimony related to M.P.'s e-mail address.  He contends that the testimony was inadmissible hearsay and that it violated the best evidence rule.  We disagree.

Burnett argues that Spanier's testimony constitutes hearsay because she relayed a piece of information that she was told out of court—the e-mail address—and that the information was offered to prove the truth of the matter asserted—what M.P.'s e-mail address was.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial . . . offered in evidence to prove the truth of the matter asserted."  Va. R. Evid. 2:801(c). Hearsay is inadmissible except as provided by the Rules of the Virginia Supreme Court, statute, or case law.  Va. R. Evid. 2:802.  "It includes testimony given by a witness who relates what others have told him or what he has read."  *Bynum v. Commonwealth*, 57 Va. App. 487, 491 (2011) (quoting *Lawrence v. Commonwealth*, 279 Va. 490, 497 (2010)).  But when a witness has knowledge of a fact that they have "gained through his [or her] own senses and not from others or from information supplied by others," testimony regarding that fact is not considered hearsay. *Bowman v. Commonwealth*, 28 Va. App. 204, 210 (1998) (quoting *Fagan v. Commonwealth*, 220 Va. 692, 694 (1980)).  Instead, their testimony is based on personal knowledge.  *Id.*

Here, when asked how she knew the e-mail account belonged to M.P., Spanier testified that she had "seen it before with [M.P.]."  She testified that she learned of the e-mail address by

reading it. Thus, her knowledge of the e-mail address was "gained through [her] own senses." *Fagan*, 220 Va. at 694. Though Spanier asked M.P. how the e-mail account was connected to M.P.'s Roblox account and M.P. told her, Spanier first gained knowledge that the e-mail address belonged to M.P. through Spanier's own senses. Thus, Spanier's testimony regarding M.P.'s e-mail address was based on her personal knowledge and not hearsay. Accordingly, the trial court properly admitted it.

Burnett's best evidence rule argument is also unavailing. He contends that M.P.'s e-mail address is a writing and, accordingly, the Commonwealth was required to introduce documentation from Google authenticating what the e-mail address was. But his argument misunderstands the application of the best evidence rule.

"[T]he best evidence rule provides that '[t]o prove *the content* of a writing, the original writing is required." *Turner v. Commonwealth*, 65 Va. App. 312, 328 (2015) (second alteration in original) (quoting Va. R. Evid. 2:1002). In other words, "where the contents of a writing are desired to be proved, the writing [the primary evidence] itself must be produced or its absence sufficiently accounted for before other evidence of its contents can be admitted." *Id.* (alteration in original) (quoting *Bradshaw v. Commonwealth*, 16 Va. App. 374, 379 (1993)).

But "the best evidence rule does *not* apply where the issue is merely the existence, execution, or delivery of the document." *Id.* (quoting Charles E. Friend & Kent Sinclair, *The Law of Evidence in Virginia* § 18.2 (7th ed. 2012)). For example, in *Turner*, the appellant challenged the admission of photographs of mail found in the basement of a home, arguing that the Commonwealth was required to offer the mail itself under the best evidence rule. *Id.* at 327. This Court held that the best evidence rule did not apply because the photographs "were not offered to prove the contents of the mail." *Id.* at 328. "Instead, the introduction of the

photographs was based on their value as circumstantial evidence connecting [the appellant] to the basement of the home." *Id.*

The reasoning articulated in *Turner* is applicable here. Spanier's testimony identifying her daughter's e-mail address was not offered to prove the contents of the e-mail conversations between M.P. and Burnett. Instead, it was offered to demonstrate M.P.'s connection to the account. Accordingly, the best evidence rule does not apply to the testimony.

### 3. Commonwealth's Exhibits 5 and 6

Burnett challenges the admission of Commonwealth's Exhibits 5 and 6, which are the certificate of authentication from Google and the related document created by Detective Allbritton, respectively. He argues that the exhibits did not meet the requirements of the hearsay exception created by Code § 19.2-70.3(H), under which they were admitted, because they contained the contents of the electronic communications between him and M.P. We disagree.

Under Code § 19.2-70.3, "[a] provider of electronic communication service or remote computing service . . . shall disclose a record or other information pertaining to a subscriber to or customer of such service, *excluding* the contents of electronic communications . . . to an investigative or law-enforcement officer only pursuant to" a subpoena, a search warrant, a court order for disclosure, or the consent of the customer. (Emphasis added). The statute further permits the provider to

> verify the authenticity of the written reports or records that it discloses . . . by providing an affidavit from the custodian of those written reports or records or from a person to whom said custodian reports certifying that they are true and complete copies of reports or records and that they are prepared in the regular course of business.

Code § 19.2-70.3(H). "The written reports and records, excluding the contents of electronic communications, shall be considered business records for purposes of the business records exception to the hearsay rule." *Id.*; *see also* Va. R. Evid. 2:803(6)(B) (creating an exception to

the hearsay rule for records "made and kept in the course of a regularly conducted activity of a business"). And "'[c]ontents' when used with respect to any . . . electronic or oral communication, includes any information concerning the substance, purport or meaning of that communication." Code § 19.2-61.

Contrary to Burnett's argument, the attachment to Commonwealth's Exhibit 5, which contains a list of hash values for the files, does not contain contents of the communications within the meaning of Code § 19.2-70.3. As the Commonwealth explained at trial, a hash value is merely a "file identifier" that is similar to "a serial number." The hash values listed in the attachment are long combinations of numbers and letters, none of which contain any indication as to the substance or meaning of the communication within the corresponding file. Thus, we cannot conclude that the attachment to Exhibit 5 contains "the contents of electronic communications" as contemplated by Code § 19.2-70.3.

Nor does Commonwealth's Exhibit 6 contain the contents of the electronic communications between Burnett and M.P. Burnett asserts that the names of the sender and recipient, the date the e-mail was sent, and the subject line are all components of the communication that constitute its contents. But the dates of each e-mail and the names of the sender and recipient serve merely as information to identify the records produced. And the subject lines of each e-mail, in this case, do not reveal information "concerning the substance, purport or meaning of [the corresponding] communication." Code § 19.2-61. Accordingly, the trial court properly admitted Commonwealth's Exhibits 5 and 6 under the Code § 19.2-70.3(H) hearsay exception.

B. *Sufficiency of the Evidence*

Burnett argues that the evidence was insufficient to establish his guilt beyond a reasonable doubt. First, he asserts that the evidence failed to establish that Photo 1B was a lewd

exhibition of nudity.  Next, he contends that the Commonwealth failed to prove that he committed a solicitation with the intent to induce M.P. to create an explicit photo.  We disagree.

"In reviewing a challenge to the sufficiency of the evidence, we affirm the trial court's judgment 'unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.'"  *Pulley v. Commonwealth*, 74 Va. App. 104, 123 (2021) (quoting *Poole v. Commonwealth*, 73 Va. App. 357, 363 (2021)).  "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)).  "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

Burnett was convicted under Code § 18.2-374.1(B)(1).  Under that statute, any individual who "[a]ccosts, entices or solicits a person less than 18 years of age with intent to induce or force such person to perform in or be a subject of child pornography" is guilty of production of child pornography.  Code § 18.2-374.1(B)(1).  The statute defines "child pornography" as "sexually explicit visual material that (i) utilizes or has as a subject an identifiable minor or (ii) depicts a minor in a state of nudity or engaged in sexual conduct . . . where such depiction is obscene."  Code § 18.2-374.1(A).  And, relevant here, "'sexually explicit visual material' means a picture, photograph, . . . digital image, . . . or similar visual representation which depicts . . . a lewd exhibition of nudity."  *Id.*

To sustain Burnett's conviction, the photograph of M.P. "must have represented 'lewd exhibition[s] of nudity' to qualify as sexually explicit visual material under the Code § 18.2-374.1(A) definition."  *Frantz v. Commonwealth*, 9 Va. App. 348, 353 (1990) (quoting Code

§ 18.2-374.1). "Lewd is a synonym of 'lascivious' and 'indecent.'" *Asa v. Commonwealth*, 17 Va. App. 714, 718 (1994) (quoting *Dickerson v. City of Richmond*, 2 Va. App. 473, 479 (1986)). We have "defined 'lascivious' to mean 'a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite." *Id.* (quoting *Dickerson*, 2 Va. App. at 479).

The photograph here constitutes a lewd exhibition of nudity within the meaning of Code § 18.2-374.1. The photograph is "close-up . . . depicting [M.P.'s] genitalia as the primary object depicted in the photograph." *Asa*, 17 Va. App. at 718-19. It depicts M.P.'s genitals and buttocks with her legs spread, posing in a manner that Burnett specifically requested. Because the "primary focus" of the photograph is a "close-up view[]" of M.P.'s genitalia and buttocks, it constitutes sexually explicit visual material within the meaning of Code § 18.2-374.1. *Asa*, 17 Va. App. at 719.

Burnett also argues that the Commonwealth failed to prove the elements of solicitation and intent. His contention is misguided. Burnett's statements to law enforcement were sufficient to satisfy the element of intent. Burnett told Detective Allbritton that he decided to play Roblox that day because he "was horny" and was "wonder[ing] if [he] could get pictures" from someone. When asked whether he used Roblox that day with the intention of soliciting images from children, he admitted that he had "the mindset that it would probably happen." He also stated that "curiosity" was the reason he sought nude photographs from underage girls that day as opposed to adult women. Burnett's statements to law enforcement alone are sufficient to prove that he acted with the requisite intent to induce M.P. to create child pornography.

His own admissions were likewise sufficient to prove that he did, in fact, solicit the photographs from M.P. When asked by Detective Allbritton whether he had "asked [M.P.] to take those pictures," Burnett admitted that he did. Detective Allbritton then sought to confirm

- 14 -

that Burnett "asked [M.P.] to take a picture of her spreading her butt cheeks, exposing her anus and vagina," and Burnett again admitted that he did.

Burnett argues that the evidence is insufficient to prove these elements because the Commonwealth did not introduce the conversations that occurred between Burnett and M.P. But from Burnett's own admissions to law enforcement, there is sufficient evidence on the record to allow the factfinder to conclude that Burnett solicited M.P. with the intent to induce her to produce child pornography. Accordingly, we affirm the trial court's judgment.

CONCLUSION

For the foregoing reasons, the trial court is affirmed.

*Affirmed.*